633 P.2d 685

**Rhonda VELKOVITZ, Petitioner,**

v.

**PENASCO INDEPENDENT SCHOOL DISTRICT, a corporation, Respondents.**

**No. 13114**

Supreme Court of New Mexico.

Aug. 11, 1981.

As Corrected Aug. 11, 1981.

Smith, Ransom & Gilstrap, Terry M. Word, Albuquerque, for petitioner.

Briggs F. Cheney, Shaffer, Butt, Thornton & Baehr, Albuquerque, for respondents.

OPINION

RIORDAN, Justice.

On certiorari, the sole issue is whether plaintiff's injuries are compensable under the Workmen's Compensation Act. §§ 52–1–1 to 52–1–69, N.M.S.A. 1978 and Cum. Supp. 1980. The trial court and the Court of Appeals both ruled against the plaintiff. We reverse.

For an injury to be compensable it must be caused by an accident "arising out of and in the course of employment." § 52–1–9, N.M.S.A. 1978. The phrase, in the course of employment, relates to the time, place, and circumstances under which the accident takes place. *Walker v. Woldridge*, 58 N.M. 183, 268 P.2d 579 (1954); *McKinney v. Dorlac*, 48 N.M. 149, 146 P.2d 867 (1944). For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his employment. *Gutierrez v. Artesia Public Schools*, 92 N.M. 112, 583 P.2d 476 (Ct.App.1978).

In the instant case, plaintiff filed a workmen's compensation action after she injured her knee while skiing at Sipapu Ski Resort.

At the time she was injured, plaintiff was employed as a school teacher by the defendant Penasco Independent School District (Penasco) and was at the ski area during school hours acting in the capacity of supervisor, sponsor, and chaperone for the school's ski team and ski club. Under the arrangement between Penasco and Sipapu, which had been in effect for approximately ten years, Penasco was obligated to provide transportation for the students to and from the ski area. Once the students were at the ski area, the Sipapu ski instructors were responsible for the ski instruction and supervision of the students while skiing on the mountain. The faculty members escorting the students were instructed by Penasco that their responsibility was only to supervise the students to and from the area and while the students were in the lodge before and after skiing. With the knowledge and permission of the defendant, faculty sponsors had a settled and long-continued custom and practice, for more than ten years, of joining the students and participating with them in the ski instruction. During a period in which the students were allowed to ski on their own, the plaintiff was skiing, fell and injured her knee.

This is a classic case of the enforced lull in work component of the personal comfort doctrine. 1A A. Larson, *The Law of Workmen's Compensation* §§ 21.00 and 21.74 (1979). The leeway accorded an employee during an enforced break in his work extends to a certain amount of wandering around and even undertaking what otherwise might seem to be distinctly personal activities.

This doctrine was previously followed in *Thigpen v. County of Valencia*, 89 N.M. 299, 551 P.2d 989 (Ct.App.1976), *cert. denied* 90 N.M. 7, 558 P.2d 619 (1976), the widow of deputy sheriff Thigpen claimed compensation for the unexplained death of her husband. Thigpen was found dead in the driver's seat of his patrol car, the victim of an apparently accidental shotgun wound. The patrol car was located near a water tank which Thigpen used for watering his horses.

The trial court refused to award death benefits finding that the death did not arise out of and in the course of employment. The trial court also found that the deputy was watering his horses and performing no duties for his employer. The Court of Appeals reversed and ordered a new trial stating that the evidence showed that Thigpen was performing the duties of his employment at the time of the accident. Thigpen's death occurred during a period when he was on-call. During the on-call period, Thigpen could move about and engage in personal activities. Thigpen's superior officers knew that he kept horses and permitted him to water the horses during the period of time when he was on-call. The Court of Appeals held that because the employer knew and consented to Thigpen's practice of watering his horses, Thigpen had not deviated from his employment and was in the course of his employment when the accident occurred.

In a case similar to the instant case, an employee of a bus company drove one of his employer's buses, which had been chartered by a private party, to a sea resort. There, the passengers boarded a sea-going vessel for a fishing expedition. The employee's duty was to await return of the passengers and be in readiness to drive the bus on its return trip. With the knowledge and permission of his employer, the employee had a settled and long-continued custom and practice of joining the passengers and participating with them in the fishing excursions. The court held that an injury on board the fishing vessel arose out of his employment. *Motto v. Cosmopolitan Tourist Co.*, 278 App. Div. 597, 101 N.Y.S.2d 873 (1951), *appeal denied* 302 N.Y. 950, 98 N.E.2d 117 (1951). The Court held that where the employee is required to remain in a particular place with no duties to perform, compensation may be awarded for an injury suffered in any reasonable recreational activity that the employee engaged in with the permission of his employer while waiting. The court held that the employee's indulgence therein was in the course of his employment and that the risk which brought about the employee's injury, arose out of his employment.

In *Davis v. Newsweek Magazine*, 305 N.Y. 20, 110 N.E.2d 406 (1953) the New York Court of Appeals in dicta correctly stated the rule that where an employee is directed as part of his duties to remain in a particular place or locality, the employee is not expected to remain immobile, and the risk inherent in any reasonable activity in that place, even though for his individual purposes, is an incident of the employment. *See also Motto v. Cosmopolitan Tourist Co.,* *supra.*

We are of the opinion that the injuries sustained by the plaintiff while skiing on the mountain with the knowledge and permission of her employer, even though for her own individual enjoyment, were caused by an accident which arose out of and in the course of her employment under the Workmen's Compensation Act. The injury to the plaintiff occurred at a time while she was at work. The school authorities were aware that the sponsors made a practice of skiing with the students. In fact, that was part of the basis for selecting the sponsors. The employer assented to the plaintiff being in the place where she was injured and to the activities she was undertaking when injured. Although not required to ski as part of her duties in supervising the students, skiing was a reasonable activity for the plaintiff while waiting. The school even admitted that it was preferable to have the sponsors on the ski slopes with the students "so that they could see that the students were behaving themselves there, as well as in the lodge." The injury was caused by a risk to which the plaintiff was subjected during a reasonable activity she pursued while waiting.

For the reasons set forth above, the decisions of the Court of Appeals and the trial court are reversed. The trial court is instructed to proceed in a manner consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI, J., concur.

EASLEY, C. J., dissents.

PAYNE, Justice, dissenting.

I dissent and agree with the opinion of Judge Sutin in the Court of Appeals.