884 P.2d 534

**Ronald E. MEEKS, Worker–Appellee,**

v.

**EDDY COUNTY SHERIFF'S DEPART-MENT, Self–Insured under New Mexico Association of Group Counties, Employer/Insurer–Appellant.**

**No. 15477.**

Court of Appeals of New Mexico.

Oct. 11, 1994.

Certiorari Denied Nov. 3, 1994.

William G.W. Shoobridge, Hobbs, for worker-appellee.

Christopher W. Nickels, Victoria L. Williams, Pelton & O'Brien, P.A., Albuquerque, for employer/insurer-appellant.

*OPINION*

HARTZ, Judge.

The Eddy County Sheriff's Department (Employer) appeals from a decision by the Workers' Compensation Administration awarding compensation benefits to Ronald E. Meeks (Worker). Although Employer raises three grounds for reversal, we need reach only one: whether Worker sustained an injury "arising out of and in the course of his employment," NMSA 1978, § 52–1–28(A)(1) (Repl.Pamp.1991), when he was injured while engaged in a self-directed fitness program. Holding that the statutory requirement was

not satisfied, we reverse the award of benefits.

## FACTS

Worker had been employed by Employer since 1989, initially as a deputy jailer. In 1991 he became a field deputy patrol officer. To maintain the new position, Worker needed to be certified as a law enforcement officer within one year. *See* NMSA 1978, § 29–7–6(B) (Repl.Pamp.1994). Despite Worker's elevated blood pressure, a physician declared him fit to attend the certification course at the state law enforcement academy.

Employer then authorized Worker's attendance at the academy. But during pre-assessment testing on March 28, 1992, Worker failed to complete the running course within the prescribed time. He was therefore not admitted into the academy.

After discussing the situation with Worker, his superior agreed to give him another chance to attend the certification program within the one-year period. Their understanding was that Worker would try to get in shape but any physical exercise program would have to be conducted during off-duty hours.

Worker began a jogging program. On April 16, 1992, Worker suffered a heart attack while jogging near his home.

## COMPENSABILITY OF INJURY

■ A disability is compensable only if the injury (1) occurred in the course of the worker's employment and (2) arose out of the employment. NMSA 1978, §§ 52–1–9, –19, and –28(A)(1) (Repl.Pamp.1991); *Kloer v. Municipality of Las Vegas*, 106 N.M. 594, 595, 746 P.2d 1126, 1127 (Ct.App.1987). Both requirements must be satisfied at the time of the injury in order for compensation to be awarded. *See Garcia v. Homestake Mining Co.*, 113 N.M. 508, 510, 828 P.2d 420, 422 (Ct.App.), *cert. denied*, 113 N.M. 488, 827 P.2d 1302 (1992). "The phrase, in the course of employment, relates to the time, place, and circumstances under which the accident takes place. For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his employment." *Velkovitz v. Penasco Indep. Sch. Dist.*, 96 N.M. 577,

577, 633 P.2d 685, 685 (1981) (citations omitted); *see Losinski v. Corcoran, Barkoff & Stagnone, P.A.*, 97 N.M. 79, 80, 636 P.2d 898, 899 (Ct.App.), *cert. denied*, 97 N.M. 483, 641 P.2d 514 (1981).

Worker relies on three New Mexico opinions that recognized compensation for accidents off the work site. In *Velkovitz* a school teacher was compensated for an injury incurred while skiing. The teacher was at the ski area during school hours while acting as the supervisor and chaperon for the school's ski team and ski club. The school policy for more than ten years had been that faculty members escorting the students participated with the students in ski instruction. The teacher was injured during a period in which the students were allowed to ski on their own. Compensability was authorized under the "enforced lull in work component of the personal comfort doctrine." *Velkovitz*, 96 N.M. at 578, 633 P.2d at 686. The doctrine is not applicable here because Worker was not taking an enforced break from work. *See id.*; 1A Arthur Larson, *The Law of Workmen's Compensation* §§ 21.00, 21.74 (1993).

*Thigpen v. County of Valencia*, 89 N.M. 299, 551 P.2d 989 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976), similarly came under the enforced-lull doctrine. *See Velkovitz*, 96 N.M. at 578, 633 P.2d at 686. The worker in *Thigpen* was a deputy sheriff who had been found dead in his patrol car near a water tank that he used for watering his own horses. We relied on the fact that the worker's death occurred during his shift of duty, when he was not to patrol but to be on call. While on call the deputy could engage in personal activities; in particular, his superiors had permitted him to water his personal horses during his shift. *Thigpen*, 89 N.M. at 301, 551 P.2d at 991.

In the third case, *Smith v. City of Albuquerque*, 105 N.M. 125, 729 P.2d 1379 (Ct. App.1986), a risk management coordinator for the city tripped and fell while leaving a restaurant after a business lunch with an assistant city attorney. The city had a written policy that recognized business lunches as a proper forum for discussing city business. *Id.* at 127, 729 P.2d at 1381. We held that an injury could be compensable when

"the employee is engaged in an off-premise activity during the lunch or meal period in furtherance of his employer's interests, and at the direction of or with the consent of his employer." *Id.* at 129, 729 P.2d at 1383. The worker in *Smith,* unlike Worker here, was performing city business during her work day in a manner specifically approved by her employer.

Thus, New Mexico case law does not support compensation on the facts presented here. No decision, however, is directly in point. For guidance we therefore turn to decisions in other jurisdictions. *See generally* Larson, *supra,* § 22. We have found only two cases that appear to be directly in point. In both, compensation was denied.

In *Haugen v. State Accident Insurance Fund,* 37 Or.App. 601, 588 P.2d 77 (1978), a police officer suffered a back injury at home during non-working hours while exercising with weights. The job specification for police officers required that officers " 'must be in good physical condition and within acceptable height and weight limitations' and must have a biennial physical examination." *Id.* 588 P.2d at 78. The injured officer was following his own self-designed exercise program. *Id.* The court acknowledged that "[t]he employer probably contemplated that claimant would engage in a reasonable exercise program and acquiesced in that program." *Id.* at 79. The court also acknowledged that the employer benefitted from employees engaging in activities that promote health. Nevertheless, the court stated:

> The critical fact is that the risk of injury from claimant's physical conditioning program did not arise out of but rather was a condition to or qualification for the employment. Claimant's employment contract requires that he maintain himself in good physical condition and establishes objective criteria in terms of weight and a biennial physical for measuring that qualification. The employer does not prescribe what police officers must do to satisfy those criteria. The employee assumes the responsibility for, and correspondingly any attendant risk of, meeting the job qualifications. He may follow a program of careful diet and walking, or engage in vigorous contact

sports. In either event, the activity and any injury resulting therefrom is neither in the course of nor does it arise out of the employment.

*Id.* The court distinguished cases in which the injuries occurred on the employer's premises or during activities specifically required or encouraged by the employer, such as when an employee was required to play football or a caddy was encouraged to play golf. *Id.* n. 2.

The same conclusion was reached in *City of Los Angeles v. Workers' Compensation Appeals Board,* 91 Cal.App.3d 759, 154 Cal. Rptr. 379 (1979). Again, a police officer was injured while exercising at home with weight-lifting equipment in preparation for a mandatory physical fitness test. Failure to pass the test would reduce the officer's rating, which could affect advancement. *Id.* 154 Cal. Rptr. at 380. The court wrote:

> Although the police department required [the officer] to take a physical agility test, there was no requirement that he prepare for it in any particular way or at all. The activity was not on the employer's premises, or under the employer's control, nor was there any benefit to the employer except to the extent that this particular individual might improve his proficiency.
>
> . . . .
>
> There is a wide variety of occupations in which it is necessary for the employee to maintain or improve physical or mental proficiency in order to continue employment or qualify for advancement. The variety of activities which might be thought to serve those purposes is infinite. When the self-improvement activity is voluntary, off the employer's premises and unregulated, the employer can have little knowledge of the physical risks involved, and no opportunity to minimize or protect the employee against such risks. These circumstances strongly militate in favor of classifying such activities as personal in the absence of some connection with employment other than hoped-for personal improvement. The fact that the employer tested the fitness of the employee periodically should not by itself make a self-

improvement program an industrial activity.

*Id.* at 382. The court cited *Haugen* in support. *Id.* n. 2.

We recognize that *City of Los Angeles* appears no longer to be good law in California. In *Wilson v. Workers' Compensation Appeals Bd.*, 196 Cal.App.3d 902, 239 Cal. Rptr. 719 (1987), the court held that a police officer was entitled to compensation for an injury sustained while he was running off duty to keep himself in condition. The officer was required to pass a physical fitness test to retain membership in a special unit of the police department. *Id.* But *Wilson* did not criticize the reasoning in *City of Los Angeles*. It distinguished that decision on the ground that the state labor code had since been amended to address specifically injuries from off-duty athletic activities not constituting part of the employee's work-related duties. *Id.* at 722. The New Mexico statute contains no provision similar to California Labor Code Section 3600(a)(9), which was relied upon in *Wilson*. The California opinion in point, therefore, is *City of Los Angeles*, which simply construes the language "arising out of and in the course of the employment." Cal.Lab.Code § 3600(a) (West 1989).

We adopt the reasoning and holdings in *Haugen* and *City of Los Angeles*. Under the present New Mexico statute Worker was not entitled to compensation for suffering an injury from self-directed, off-duty athletic activity. It is for the legislature, not the judiciary, to provide employees with the type of expanded coverage advocated by Worker in this case. *See Varos v. Union Oil Co.*, 101 N.M. 713, 715, 688 P.2d 31, 33 (Ct.App.1984).

## CONCLUSION

Under the undisputed facts of this case, we hold that as a matter of law Worker's injury while jogging neither arose out of nor was in the course of his employment. Accordingly, we reverse the award of benefits and attorney's fees to Worker.

**IT IS SO ORDERED.**

DONNELLY and BIVINS, JJ., concur.